May it please the Court, my name is Rebecca Silbert, I'm an Assistant Federal Public Defender. We were appointed to represent Mr. Abdulrafi approximately midway through the district court proceedings. All right, last, yesterday evening, I think about 4 o'clock, I got, we all, we're all aware of it now, but we sort of got it in, I think Judge Tashimo was in court and got it when he got out of the court. But anyway, you're, there's an indication you're trying to augment the record at this point and initially the, it's stated in there that you had, you'd faxed something over to the government and they had indicated they would be objecting. Is that still their position now that they've seen what you want to augment it with? Yes, Your Honor. All right, how's this going to help us? The district court, the issue before the district court was Mr. Abdulrafi. So you can include this as part of your argument. Why don't we put her back to 10 minutes now that I know that and we'll just include that as part of your argument. And we're going to have, we'll just have to consider it as part of what we, in our opinion, we'll address it or our mem dispo, whatever it is. Thank you, and I'd like to reserve two minutes for rebuttal, please. Okay. The issue before the district court was Mr. Abdulrafi's trial counsel disclosure of three defense reports to the prosecutor, which the prosecutor then used against Mr. Abdulrafi at trial. We had requested an evidentiary hearing on that issue before the district court. The district court found that the factual record had not been developed. The district court, as part of that finding, stated that Mr. Abdulrafi, during his state appellate court proceedings, state habeas proceedings, had not requested an evidentiary hearing. In fact, he had. He had in his petition for writ to the 6th Appellate District in California. That evidence was not, excuse me, that evidence was not before the district court in this case because the district court had an incomplete record. When you say he had developed it, what was in there that he developed? Because you've got these reports that were turned over. That doesn't seem to be disputed. The issue is whether the prosecutor said that they knew about them. It didn't matter because the prosecutor said they had the names of these, what, I think there are two minors that ended up being part of it, minors that alleged that they had also been improperly touched by your client, correct? Please correct me if I'm wrong. The court is talking about the district court's finding that we had not shown prejudice because the prosecutor, because the district court stated that the prosecutor would have made the finding anyway, found the girls anyway. The district court made two fundamental errors with that. The first was that the district court relied upon this unsworn statement of the prosecutor that was submitted by the government after Prosecutor Powell had traversed before the district court. Now, that unsworn statement, which is not admissible evidence, does not say in it, well, first of all, it doesn't say that he didn't have the reports. We infer from that that he absolutely does and did, not to mention the fact that the trial transcript makes clear that he did. It also doesn't say in there that he would have discovered the information anyway. That was a leap made by the district court. The district court said that trial counsel, prosecuting trial counsel, would surely have met with the girls, would naturally then have spoken to the other girl. Were their names in the police report? The one girl, Candice, her name was in the police report. Her sister, Charmaine, I believe her name is in the police report. The prosecutor had provided a witness list to defense counsel at the onset of the case. I believe the date of the witness list was May 20th. The defense interviews occurred some months after that disclosure of the witness list, and the first day of trial was January 24th. One of the things we don't know because of the district court's failure to grant an evidentiary hearing is when the prosecutor received those defense reports. If the prosecutor received the defense reports a day, two days on the eve of trial, there is no basis for the finding that the prosecutor would have uncovered that evidence that he used anyway, because he hadn't. He had never amended his witness list to add Charmaine, the other sister, or to add Jasmine, Mr. Abdul-Rafi's daughter. He called both Charmaine and Jasmine. So essentially because he was a crummy prosecutor and didn't really read the police report very carefully, that then it was defense counsel's error that caused him to be a better prosecutor is, I mean, obviously the names being there have to put, I mean, you can't say that that doesn't put on some notice. The defense counsel was, as an aside, to the extent defense counsel was sane at all, which this Court knows that we now know defense counsel murdered his own mother and may have been insane back during the trial. But putting that aside, defense counsel certainly was on notice that the prosecutor might be calling Candace, and was on notice that the prosecutor had one police report from 1994. The information that was admitted at trial was drastically different than that in the police report, and included further statements extremely inflammatory and prejudicial by Charmaine, and the prosecutor was able to impeach Mr. Abdul-Rafi's own daughter using the defense investigator report. That testimony was in some ways more critical than the other act's evidence, because the daughter was a witness to a murder. Now, who was allowed to impeach Mr. Abdul-Rafi's daughter? The prosecutor called Mr. Abdul-Rafi's daughter because Mr. Abdul-Rafi's daughter, Jasmine, was present during the conduct that had been alleged with victim Crystal. This was the watching of the Pocahontas movie. Because we've got two, we've got the two present alleged victims, and then we have the two prior ones, which... Correct. And Crystal was one of the alleged victims. Now, Crystal and Jamie, the alleged victims, their allegations against Mr. Abdul-Rafi were without a doubt significantly less significant, significantly less not supported as well as the allegations made by Candace and Charmaine, the two sisters that were uncharged. The prosecutor never charged them. He never charged them as victims. He could have. He didn't. He never listed Charmaine on his witness list. He never listed Jasmine on his witness list. He used all of that information that he obtained from the defense investigator reports against Mr. Abdul-Rafi. There is no indication, and without an evidentiary hearing, there's no way to know. There's nothing that can support the district court's findings. What would your remedy be in the sense that, okay, so that you get a new trial. These people are now, I mean, they'll be at the next trial, and there's no way you can stop that, right? Well, that's an interesting question, Your Honor, because that did come up this morning, and I apologize not being a state practitioner. I don't know the state rules as well as I'm sure Your Honor does. However, Mr. Abdul-Rafi should be permitted the chance to have another trial where it gets litigated before the trial judge whether the testimony of these two girls comes in, whether there's some error, whether there's some reason why the trial should be as it would have been without the error of the original defense counsel. Unfortunately, the statutory scheme in California has gotten pretty bad for people under, I think, 1108, you know, in terms of that most of that comes in, and it seems to be being held up on appeal. But, you know, I guess where's your record? You know, obviously I know that defense counsel, you know, now that subsequently developed facts that he murdered his mother and was found not guilty by reason of insanity and has a diagnosis of what, paranoid schizophrenia? Correct. All right. Let's assume that to be true. But we also have, we still have the trial transcript, as it were. You still have to show error in that, you still have to show it based on, you know, just because someone has a mental illness doesn't mean that they can't be effective counsel. That's correct. But under Strickland, the court, the district court and the lower courts to the extent that, well, there was no decision on this, but had there been one, the district court was required to assume that trial counsel, defense counsel, acted reasonably and competently to the extent his mental illness affected his thinking. That affects the weighing, the balancing that goes into determining whether there was ineffective assistance of counsel. And as to the court's prior question, there's also no way to know whether the girls on a retrial would say the same thing that they said. It's been many, many years, and there were certainly issues in this case. Well, it's always better to have a retrial. People forget. But I'll let you reserve the rest of your time. I know you want to have a rebuttal. Oh, go ahead. Sure. I don't know if you're familiar. What you're claiming now was not presented to the state court at any time. That is that the trial counsel is a schizophrenic. Now, and if we remanded this, we'd be presenting it to the federal court, and this issue has never been exhausted. Is there any way that you know that this matter could be presented to the California courts? We could. If it were remanded to the district court and the district court thought it appropriate, we could move to stay the habeas proceedings in federal court, go back to the state court, reopen the habeas there, and present the evidence of his mental state. That's what you want to do. I believe that decision would be made in the first instance by the district court judge, whether he wanted to address it or have us stay and remand. But either one would be appropriate. May it please the court, Violet Lee from the state attorney general's office on behalf of Apple Lee. At bottom, this is a very simple case. Petitioner claims that his trial counsel turned over to the prosecutor certain defense investigator reports, which then enabled the prosecutor to learn about the victims in the two uncharged offenses. And these are the sisters Sharman and Candice. Now, the prosecutor has signed a declaration saying that he learned about Sharman and Candice through independent investigation. He knew about them and personally interviewed them before the defense investigator interviewed them. This is corroborated by the record in front of this court. What we have in front of this court is the prosecutor's witness list, which is dated May 20th, 1996. The witness list includes Candice, one of these two sisters. Now, the prosecutor, this corroborates the fact that the prosecutor knew about Candice back in May 1996. When did the defense investigator interview these two sisters? Not until months later, September 1996. In fact, one of the defense investigator reports, the one that's for Sharman, the defense investigator puts on there, Sharman is a possible witness in this case. By inference, we can see from that defense investigator's report, dated months after the prosecutor had already decided to present one of these girls as witnesses, and including this notation, Sharman is a possible witness in this case, we can see by inference that it is the defense investigator responding to the prosecutor by going out to interview these girls. It's not the prosecutor who got reports from the defense investigator and then went out to talk to them. He knew about them. He knew about them months, months before these girls. But we don't know what the prosecutor knew, though. We only know that this woman was listed as a witness, but we don't know the extent of that knowledge. You don't have a statement in the file of what was the conversation or what was the investigation, isn't that right? The prosecutor does not have a statement in his file about his interview of these two sisters, but we certainly have the declaration of the prosecutor that he knew about these sisters and that he went out and interviewed them before the defense investigator ever interviewed them. So if this case were ever remanded, which would be inappropriate in our view, if it were ever remanded to the district court for an evidentiary hearing, what would we have? We'd have the prosecutor who would get up there and testify that, you know, I knew about these people, these two sisters back in May. I knew about them independently of any investigator to report from the defense counsel. And what would we have on the other side? Would he say this is what they told me? I didn't see that in there. Maybe I'm wrong. Your Honor, I think it's reasonable to assume it's going to be in the record. When the prosecutor interviews the Sharman and Candace, who are the victims of the uncharged crimes, and then Sharman and Candace then get up on the witness stand and testify about the uncharged crimes, there's no point for the prosecutor to be talking to these two girls except about the uncharged crimes. So I don't think, Your Honor, that there's any reasonable basis to infer that he's talking to them about the weather or school or anything else. He's talking to them about the uncharged crimes. You know, the remand will also be entirely inappropriate to present this new evidence about the defendant. Well, what is the ñ okay, but I guess what is the new? At this point, we don't have any evidence before us that his ñ we have the evidence that he was convicted of ñ well, he murdered his mother and he was found not guilty by reason of insanity, and he has some diagnosis. What other evidence do we have that it affected this? Where is that ñ is that developed anywhere? That's not going to go anywhere, Your Honor. And Your Honor is entirely correct in stating that ñ Well, if they could develop it, let's assume that they could. If they went out and they could develop and show that, would they be entitled to a second and subsequent habeas? Would they be able to ñ if they could actually make the requisite showing that it wasn't available at the time, could they do that? Well, even if they do show that he is now mentally incapacitated, he killed his mother six and a half years ago. Well, I know, but beyond ñ but that to me doesn't tell me that it affected this trial. Right, precisely. But let's say they can get more, which I've never ñ you know, let's say they can go out and they go and interview him and he signs a declaration and said, you know, I was suffering ñ or his doctor says I was suffering from this and I da-da-da-da, you know, that they can get more to show that. Could they try to get a second habeas? Your Honor, but no matter how mentally unstable he may be at this time, unless that there's some indication in the trial record that he was ineffective and the very best indication of whether or not defense attorney was competent or incompetent is the record of his performance at trial, unless the ñ Well, there could be other things that could be developed that would show what informs certain decisions, but we don't have that here. I mean, we don't have that here. And then whoever, you know, that ñ the judge would compare that against the record and, I mean, you could be, you know, crazy, but you could still probably be ñ you know, sadly, you could still probably be a good attorney too in some instances. So that would ñ but the thing is, is would they be able to go ñ say if they could develop something to show that his mental ñ you know, they actually had ñ right now we don't have any evidence saying his mental illness affected his trial. If they develop ñ that's what they want to do. If they develop that, not on this case, but would they be able to get a second and subsequent habeas, if they could convince a court of that? Well, Your Honor, I assume that under the rules, the other side would have to ask this court for ñ They'd have to get permission, but they'd have to make a showing first. Precisely. Right now they're saying, well, we want to see if we can make a showing. Well, I think the question is would you oppose an application for a second and successive petition based upon the attorney's insanity? It would be reasonable, Your Honor, to assume that we would oppose it. Well, just on that alone, but if they showed you more, you'd have to look at it, right? Precisely, and at this point it would be speculative. But, you know, that would be their remedy at that point. But at this point, there's absolutely nothing in the record to warrant any relief or any remand. You know, we already have the record. Well, the remand would be for the purpose of, you know, giving the petitioner the opportunity to develop a record based upon this preliminary information. I mean, that's the place to do it. The appellate court is not the place to develop the record, right? Well, again ñ But speaking of opposition, let me ask this. You have the appellant's motion to supplement the record, right? I do, Your Honor. You've seen that now, and in that motion, Ms. Silbert represents that you indicated that you would be opposing this motion. That's right, Your Honor. Do you oppose it? We do, Your Honor. Would you tell us briefly why? This document, the petition was not before the district court. You know, this court should be reviewing it. Was it your obligation to get it before the district court? Pardon me, Your Honor? Was it your obligation to get it before the district court? We don't believe that we were remiss in our obligation to present to the district court. Don't the rules provide that it's a respondent's obligation to get the entire record in habeas case to the district court? It is not the entire record, Your Honor. It is all relevant portions of the state court record. So what's your ñ that this is not relevant? Your Honor, we do believe that we provided all relevant portions of the state court record. Are you saying that this petition is not relevant? Your Honor, frankly, if it is relevant, it became relevant only when the trial ñ excuse me, the district court judge issued its order in which it denied an evidentiary hearing on the basis that petitioner failed to develop the factual record in the state court and, by the way, failed to ask for an evidentiary hearing. Now, at that point, petitioner, who is well aware of what petitions he filed in the state court, should have presented that petition to this court. Now, it was not our obligation to present that petition, which is a court of appeal habeas corpus petition. What we normally do is we present to this court and to the district court all relevant documents, which are documents filed in the California Supreme Court to show whether or not petitioner exhausted his claims. We do not search for court of appeal habeas corpus petitions, superior court corpus petitions. And in this case, if there's any relevance to this document, it did not arise until the district court's order. And at that point, the other side had an opportunity to say, well, no, wait a minute, we did. We did ask for an evidentiary hearing. But the fact that they asked for an evidentiary hearing is not going to get them very far because the district court's order said the petitioner failed to develop the factual record in the state court and, by the way, didn't ask for an evidentiary hearing. The place to develop that would be at the evidentiary hearing. Well, Your Honor, petitioner has submitted to the district court a stack of pleadings this high as well as to this court, none of which was ever presented to the state courts. That's what they failed to present to the state courts and failed to develop the factual record in the state court. And it's not simply a mere request for an evidentiary hearing that's going to satisfy their burden of pursuing these claims diligently in the state court. They did not do that in this case. They have not done so. I take it that they didn't know and didn't have any way to know that the lawyer who represented this guy had killed his mother and was found not guilty by reason of insanity. Boy, if you've got an insane lawyer representing a defendant, don't you think the courts sometimes somewhere ought to take a look at it? Well, Your Honor, certainly the other side has made the argument that the trial attorney showed some mental instability as far back as 1999 and attempted to submit to this court. I'm not talking about what they submitted to this court. I'm talking about whether or not it was available to them to submit to other courts, to the state court, to the district court. Apparently not. Well, Your Honor, the trial attorney killed his mother before the district court rendered its judgment. And, you know, perhaps they should have been more diligent and found that out. Following the obituary? If they had, you know, while the case was pending in the district court, perhaps if they had, you know, found that out, they could have presented it while it was pending instead of trying to, you know, create a moving target at this point for this court. All right. Thank you. Thank you, Your Honor. Your Honors, the relevance of the omitted document from the record became clear the moment that the Attorney General's Office objected to our request for an evidentiary hearing. They objected to our request. Well, I don't think you can say that. I mean, just because someone objects, that means that it should come in? Is that what? No. They didn't have to object to our request for an evidentiary hearing.  They cited Williams v. Taylor, which is the Supreme Court ruling. It's a Supreme Court case that requires that a petitioner develop his factual record and in most instances request an evidentiary hearing. When they objected to our request. I guess I'm just not following. I'm not following that you win because someone objects to what you want to do. I mean, that happens all the time. We're not talking about winning anything other than our request that this court recognize the existence of his state petition so that this court can remand to the district court for consideration of our request for an evidentiary hearing. Well, you also asked to have it augment the record, too, didn't you? That's correct. We have to have the record augmented in this court for this court to recognize that the document exists so that this court can remand to the district court. That's correct. But what about the state's argument about lack of diligence? So at that point, you knew it was an issue, but still you made no, you know, you didn't bring that to the district court's attention. That's correct, Your Honor. And I believe that this is about the difference between the opportunity and the obligation. The government did have the obligation to provide a form. Did that attorney kill his or her mother? Not yet. That's only Mr. Hamilton so far. We certainly, I concede that we had the opportunity to provide the document to the district court. As I said in my declaration, and I understand that we filed it very recently, but I do have a declaration attached to that request, and in that declaration I say that it arrived in our files at some point. We have no record, and no one can find out when we got it. We did not get it from the respondent. We think we may have received it from our client. I was not aware of it until last Sunday when, in preparation for this argument, I went back through every piece of paper in the entire case. It was, at the heart of it, it was the government's obligation to provide a full and complete record. Well, what about the argument of Ms. Lee that, well, the government's obligation, apparently, is to provide only what appears to be relevant, you know, at the beginning of the case, and this didn't become relevant until Judge Alsop relied on the lack of a request. The rule and the order to show cause issued by Judge Alsop do require that they provide every relevant document from the state trial and appellate court record. The relevance of the writ is that it was in the writ that Mr. Abdul-Rafi's counsel requested an evidentiary hearing. That was directly relevant. Had they not, had the government not objected to our request for an evidentiary hearing, that particular writ may not have been relevant. But as soon as they ---- Your request in the district court. That's correct. We made that request in the, well, our office didn't. His original counsel made that request in the original petition, made it again in the traverse. They then filed an objection following the filing of our traverse to that request for an evidentiary hearing. That absolutely made relevant the state appellate court petition. Given that, this case does need to be remanded so that the mental health record can be developed and so that we can address what they have called a declaration. It is, in fact, unsworn and admissible evidence. The attorney general argues that by inference and by reasonable inference, the district court's conclusions were correct. Those inference could not and should not have been made without an evidentiary hearing. All right. Thank you for your arguments. This matter will stand submitted. The Court now is in recess until tomorrow. Thank you. Thank you.
judges: Bright, Tashima, Callahan